UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE MARK A. BARNETT, JUDGE

| | |
|---|---|
| AM Stone & Cabinets, Inc. <br><br>      Plaintiff, <br> v. <br><br>United States, <br><br>      Defendant. | Court No. 24-00241 |

**MEMORANDUM OF LAW IN SUPPORT OF THE RULE 56.2 MOTION OF
PLAINTIFF AM STONE & CABINETS INC.
FOR JUDGMENT UPON THE AGENCY RECORD**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Plaintiffs

July 28, 2025

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    STATEMENT PURSUANT TO RULE 56.2(c)............................2

    A. Administrative Determination Under Review...........................2

III.   Issues of Law .........................................................................3

IV.    Summary Of Arguments.........................................................3

V.     Statement Of Facts................................................................3

VI.    STANDARD OF REVIEW .....................................................5

VII.   ARGUMENT ...........................................................................7

    A.     Commerce's Finding that AM Stone Did Not Provide Sufficient information to the Department is Contrary to the Facts of Record...........7

    B.     All of the Relevant Information is of Record and thus the Taking of Adverse Inferences Improper ..................................................9

        1. *AM Stone was fully cooperative and answered all of the Department Questionnaires* ...................................................*14*

        2. *AM Stone attempted to obtain information from its third party suppliers, but was unable to obtain full cooperation*.............................*15*

        3. *Court Precedent Does not Require a Party to Provide Information Not in its Possession and Which it Cannot Reasonably Obtain*...............*17*

VIII.  CONCLUSION...........................................................................21

TABLE OF AUTHORITIES

CASE LAW

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, (Fed. Cir. 1984) .................5

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)....................................................................................................6

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, (Fed. Cir. 2012) ...........................................................6

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938) .........................5

*Daewoo Elec. Co. v. United States*, 712 F.Supp. 931 (Ct.Int'l Trade 1989).....................................................................................................18

*Diversified Products Corp. v. United States*, 6 CIT 155 (1983) .............................6

*Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021)...........................................................................18

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) .....................6

*Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.* 144 S.Ct. 2244 (2024)...........................5,9,11

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. 2009)...................6

*Mannesmannrohen-Werke AG v. United States, 23 CIT 826, 77 F.Supp.2d 1302 (1999)*.............................................................................11

*Nippon Steel Corp. v. United States,* 337 F.3d 1373 (Fed.Cir.2003) ............... 11,15

*Novosteel SA v. United States,* 284 F. 3d 1261 (Fed. Cir. 2002)............................6

*Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565 (Fed. Cir.1990)...............................................................................................17,18

*Peer Bearing Co. v. United States*, 182 F.Supp.2d 1285 (Ct. Int'l Trade 2001)....................................................................................................18

*SKF USA, Inc. v. United States.* 254 F.3d 1022 (Fed. Cir. 2001) .........................6

*Tung Mung Dev. Co., v. United States*, 354 F.3d 1371 (Fed. Cir. 2004) .................6

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) ..............................5,6

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987)..........................6

*Venus Wire Industries Pvt. Ltd. v United States,* 471 F.Supp.3d 1289 (Ct. Int'l Trade 2020)......................................................................15, 16, 17

STATUTES

19 U.S.C. §1516a(a)(2)(A)(i)(I) ....................................................2

19 U.S.C. §1516a(a)(2)(B)(iii) .....................................................2

19 U.S.C. §1516a(b) .....................................................................5

28 U.S.C. §1581(c) .......................................................................2

19 U.S.C. §1673d(c)(5) .................................................................5

19 U.S.C. 1677e.............................................................................6

ADMINISTRATIVE

Statement of Administrative Action ("SAA") accompanying the
Uruguay Round Agreements Act, Pub.L. No. 103-465, 108 Stat.
4809 (1994) ......................................................................12

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE MARK A. BARNETT, JUDGE

| | |
|---|---|
| AM Stone & Cabinets, Inc.<br><br>                    Plaintiff,<br>        v.<br><br>United States,<br><br>                    Defendant. | Court No. 24-00241 |

## I.    **INTRODUCTION**

This is an appeal from the final results issued by the United States Department of Commerce, International Trade Administration (ITA) in the §751 antidumping and countervailing duty administrative reviews of, *Quartz Surface Products from the People's Republic of China* as amplified by the Issues and Decision Memorandum for the Final Results, which was incorporated by reference in the Final Results *Federal Register* notice published at 89 Fed. Reg. 92,622 (November 22, 2024)[1]. Plaintiff AM Stone & Cabinets, Inc. is an interested party as defined by §1677(9)(A). AM Stone was an active participant having filed numerous questionnaire responses and comments, as well as a case brief.

Plaintiff asserts the following errors in the Commerce Department's ("Commerce" or "Department") final determination:

---

[1] Pursuant to the direction of the Court, both the AD and CVD reviews are the subject of this single Court action.

- The Department's finding that AM Stone did not provide sufficient information to the Department to enable the Department to determine that the quartz surface products imported by AM Stone which were exported by Universal Quartz to the United States during the POR were not Chinese-origin quartz slab is not supported by substantial evidence.
- The Department failed to take into account that AM Stone fully cooperated and provided evidence as to the origin of all 5 of its shipments. The Department's rejection of such information was an abuse of discretion.
- There is no evidence that the goods imported by plaintiff were not manufactured in Malaysia and there is significant evidence that these goods were manufactured in Malaysia. There is no evidence that these goods were manufactured in China. Any decision made in the absence of evidence, is necessarily an abuse of discretion, and such decision is necessarily not based on substantial evidence.

## II. STATEMENT PURSUANT TO RULE 56.2(c)

### A. Administrative Determination Under Review

This action is brought pursuant to §1516a(a)(2)(A)(i)(I), 19 U.S.C. §1516a(a)(2)(B)(iii), and 28 U.S.C. §1581(c) to contest Commerce's final determination in the administrative review of the antidumping and countervailing duty order in *Quartz Surface Products from the People's Republic of China* as amplified by the Issues and Decision Memorandum for the Final Results, which was incorporated by reference in the Final Results *Federal Register* notice published at 89 Fed. Reg. 92,622 (November 22, 2024). In the Final Results, Commerce found that the goods were a product of China, not Malaysia and assigned a rate of 326.15% for the antidumping duty review and 45.32%. The Department based this finding on the basis of a lack of cooperation and an absence

of information for certain shipments of the exporter.

## III.    Issues of Law

The Plaintiff presents the following issues.  Commerce's determination was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  The issues are:

- If there is no evidence of non-cooperation on the part of AM Stone, can the Department take adverse inferences and apply adverse facts available against a fully cooperative respondent due to the non-cooperation of an unrelated third party?
- If a party provides all of the information in its possession, and the only missing information is that of unrelated third parties, can the Department find a lack of cooperation for that party?
- Can the Department require a party to provide information not in its possession and which it cannot reasonably obtain?

## IV.    Summary Of Arguments

- AM Stone was fully cooperative and answered all of the Department Questionnaires.   To the extent that any data was missing from the record, such data would have been supplied by the unrelated supplier.  The unrelated supplier refused to cooperate with AM Stone and the Department, but there is no allegation that AM Stone did not provide all of the information in its control.
- AM Stone attempted to obtain information from its unrelated supplier, but such supplier did not provide such information.  AM Stone did not have sufficient market power to compel the cooperation of the unrelated supplier.
- Court precedent does not permit the Department to require a party to provide not in its possession.   A party can only provide information in its possession and which it can reasonably obtain.  AM Stone provided all such information.
- Based on the foregoing, the Department should use neutral facts available and cannot take adverse inferences against AM Stone.

## V.    Statement Of Facts

The antidumping and countervailing duty administrative review of *Quartz Surface Products from the People's Republic of China* was initiated on September

11, 2023 pursuant to a request of AM Stone.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed. Reg. 62322 (Sept. 11, 2023) (P.R. 6).

On June 14, 2024 plaintiff submitted a response to the Department's questionnaire.  (P.R. 52)

On July 3, 2024 plaintiff submitted a response to the Department's supplemental questionnaire. (P.R. 62)

On August 5, 2024 the Department published the preliminary results for the administrative review.  Plaintiff was found not to have established that its product was not produced in China and was assigned the China-Wide rate of 326.15% for the antidumping duty review and  45.32% for the countervailing duty review. See *Quartz Surface Products from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2021-2023 and 2021-2022 Countervailing Duty Administrative Reviews*, 89 Fed. Reg 63409 (August 5, 2024). (P.R. 64, 65 and 66).

On November 18, 2024, the Department issued the final results. (P.R. 74  and 75.)

On November 22, 2024, these results were published in the Federal Register at 89 Fed. Reg. 92622.  (P.R. 76)  In the final results, the Department continued in the antidumping duty review to assign the China-Wide rate of 326.15% and in the countervailing duty review continued to assign the China-Wide rate of 45.32% based on its determination that plaintiff had failed to establish that its products were sourced from a country other than China. The Department, therefore, placed the imports from the plaintiff into the China-wide category and assigned the rate given to the China-wide entity. (P.R. 76)

## VI.    **STANDARD OF REVIEW**

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts review the statute to determine whether Congress has directly spoken to the precise question at issue.

If the statute is silent or ambiguous with respect to the specific issue, the Supreme Court has held that it is the responsibility of the Federal Courts to determine the meaning of the law. *Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).    Loper* stated in relevant part "*Chevron* is overruled. Courts must exercise their dependent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright* 144 S.Ct. 2244 at 2273.

Furthermore, once the statute has been properly interpreted by the Court, the question is then whether the decision is supported by substantial evidence. Substantial evidence is well defined by Court precedent. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938). Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted). Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'"

*Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

It is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and capricious. *See, e.g., SKF USA, Inc. v. United States.* 254 F.3d 1022, 1028 (Fed. Cir. 2001). "{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, while "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974).

Where a determination is based on 19 U.S.C. 1677e, the Department must make specific findings and such findings must be based on substantial evidence.

## VII.    ARGUMENT:

A.    Commerce's Finding that AM Stone Did Not Provide Sufficient information to the Department is Contrary to the Facts of Record

The Court must carefully consider the facts of record.  When it does so, it will confirm that all of the facts of record, when taken together, do not support the Department's position, and as a totality support plaintiff's position.

As a preliminary matter, AM Stone submitted all of the information that it was able to obtain from its unrelated supplier and was in its possession.   There are no allegations that AM Stone withheld any information in its possession.    This information clearly established that the quartz slab at issue was manufactured in Malaysia.

AM Stone provided the following to the Department:

(1)  An  Excel  worksheet  with  information  on  the  product  code, manufacturer/relationship, importer, quantity, unit of measurement and gross unit price for the only five entries AM Stone imported from Universal Quartz;( C.R. 11)

(2) entry documentation establishing how AM Stone made entry and claimed that it was product of Malaysia.  (P.R. 52, C.R. 10)

(3) Clear and undisputed photographs of Resstone's factory (outside and inside with raw material stock) and the production process (with descriptions) which takes place in Malaysia (P.R. 52 and C.R. 10)

(4) A business report from EMIS on Resstone Manufacturing, meticulously detailing information on the company's structure, officers, financials, and other key elements. (P.R. 52, C.R. 10)

Critically, the information provided the full universe of information for AM Stone's  importations,  even  if  it  did  not  cover  all  of  the  exports  by  the exporter/producer.  The Department concedes this point, when it stated that "AM

Stone . . . provided a narrative of its understanding of Resstone's manufacturing process and photos of certain parts of the manufacturing process." (P.R. 65)  This is the intention of the review – to verify whether production of the Slab takes place in Malaysia, and AM Stone clearly substantiated that production does take place in Malaysia by having provided the above described documents, and "a narrative of its understanding of Resstone's manufacturing process and photos of certain parts of the manufacturing process."

This is important.

The Department's position is that certain information was not supplied.  An analysis of this, however, shows that any deficiencies were those of the exporter, not plaintiff. In the decision memorandum for the preliminary results the Department stated that AM Stone was unable to provide the "universe of Universal Quartz's entries during the POR" (P.R. 65), which when read in context means that the Department is not disagreeing with the proposition that AM Stone did provide the information for its entries.      The Department also found that certain corporate information including the "exporter's corporate structure, accounting and financial practices, an inventory movement schedule related to quartz slab purchases, as well as documentation related to the production of a U.S. entry" (P.R. 65).   There is no evidence that plaintiff, the unrelated importer, would have access to such information.  Further, a significant portion of the information not provided is ultimately not relevant to the issue as to production of a specific entry.

In sum, AM Stone provided information substantiating its purchase of Malaysian Quartz for all of its importations and provided all of the information in its possession.  To the extent that such information was not available, there is no allegation that such information was in the possession of AM Stone.

B.    All of the Relevant Information is of Record and thus the Taking of Adverse Inferences Improper

The Department's determination ultimately was the result of the taking of adverse inferences with the use of adverse facts against a fully cooperative respondent due to the non-cooperation of an unrelated third party.   The taking of adverse inferences and the use of adverse facts is a very serious step which should not be taken lightly.   Such adverse inferences go beyond remedial measures and include an amount which is intended for deterrence and hence is penal in nature. The language of the statute is important and must be fully considered by the Court and not merely the agency.   As noted by the Supreme Court in *Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.* 144 S.Ct. 2244 (2024)

> **Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority**, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.
> Loper Bright at 2273

In order to understand whether an agency has acted within its statutory authority, it is necessary to examine the exact test of the underlying statute.   The text of the statute states in relevant part:

> **(a)In general**
> If—
> **(1)** necessary information is not available on the record, or
> **(2)**an interested party or any other person—
> **(A)**   withholds information that has been requested by the administering authority or the Commission under this subtitle,
> **(B)** fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,

- 9 -

**(C)** significantly impedes a proceeding under this subtitle, or
**(D)** provides such information but the information cannot be verified as provided in section 1677m(i) of this title,
the administering authority and the Commission shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination under this subtitle.
**(b)Adverse inferences**
**(1)In general**
If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle—
**(A)** may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available; and
**(B)** is not required to determine, or make any adjustments to, a countervailable subsidy rate or weighted average dumping margin based on any assumptions about information the interested party would have provided if the interested party had complied with the request for information.

The language of the statute is clear. Subparagraph (b)(1) clearly states that if:

"an **interested party has failed to cooperate** by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle—
(A) **may use an inference that is adverse to the interests of that party** in selecting from among the facts otherwise available.

In this case, however, AM Stone is **not** the interested party that failed to cooperate. This is a condition precedent on the use of adverse inferences. Simply put, the plain language of the statute clearly demonstrates that there is no authorization in the statute to use an inference that is adverse to an interested party that cooperated. Rather, to the contrary, it was the unrelated foreign producer that did not cooperate, and to the extent that the Department is authorized under the statute to take adverse inferences, it can only do so against the uncooperative exporter. This is the only permissible interpretation under the express language of

- 10 -

the statute.

Furthermore, even if the statute is misconstrued and misinterpreted to implicate AM Stone as "that party" instead of the foreign producer, AM Stone made the maximum effort to provide to the Department all of the information it could gather from an uncooperative unrelated producer/exporter. AM Stone satisfied the statutory requirement of using its best efforts.

The Courts have explained that the statute does not provide an express definition of the term "the best of its ability." It is ultimately up to the Courts, as the final arbiter of the law, to decide the meaning of this term. (See *Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.* 144 S.Ct. 2244 (2024)) The Federal Circuit has interpreted this phrase stating that "the statutory mandate that a respondent act to `the best of its ability' requires the respondent to do the maximum it is able to do." *Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1382 (Fed.Cir.2003).

To meet this standard, Commerce "needs to articulate why it concluded that a party failed to act to the best of its ability, and explain why the absence of this information is of significance..." *Mannesmannrohen-Werke AG v. United States,* 23 CIT 826, 839, 77 F.Supp.2d 1302, 1313-14 (1999).

In order for an entity to be found not to be cooperative, it requires more than a showing of an error or a mistake. *Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003), clearly outlines the requirements for a lack of cooperation. In *Nippon Steel* the plaintiff had failed to provide certain conversion data **in its**

**possession** in a timely manner.    The issue was whether such failure justified the

application of adverse inferences.    The court found that there were two

circumstances where information might not be complete.  The Court of Appeals for

the Federal Circuit stated:

> The statute has two distinct parts respectively addressing two distinct
> circumstances under which Commerce has received less than the full
> and complete facts needed to make a determination. Under subsection
> (a), if a respondent "fails to provide [requested] information by the
> deadlines for submission," Commerce shall fill in the gaps with "facts
> otherwise available." The focus of subsection (a) is respondent's failure
> to provide information. The reason for the failure is of no moment. The
> mere failure of a respondent to furnish requested information — for any
> reason — requires Commerce to resort to other sources of information
> to complete the factual record on which it makes its determination. As
> a separate matter, subsection (b) permits Commerce to "use an
> inference that is adverse to the interests of {a respondent} in selecting
> from among the facts otherwise available," only if Commerce makes
> the separate determination that the respondent "has failed to cooperate
> by not acting to the best of its ability to comply." The focus of
> subsection (b) is respondent's failure to cooperate to the best of its
> ability, not its failure to provide requested information.
>
> The legislative history found in the Statement of Administrative Action
> ("SAA") accompanying the Uruguay Round Agreements Act, Pub.L.
> No. 103-465, 108 Stat. 4809 (1994) ("URAA"), confirms the distinction
> between the two sections. . . .   In adopting the URAA, Congress
> changed the terminology and noted:
>
>> New section {1677e(a)} requires Commerce and the
>> Commission to make determinations on the basis of facts
>> available where the requested information is missing from the
>> record or cannot be used because, for example, it has not been
>> provided, it was provided late, or Commerce could not verify
>> the information.
>> * * *
>> {N}ew section {1677e(b)} permits Commerce and the

Commission to draw an adverse inference where a party has not cooperated in a proceeding. A party is uncooperative if it has not acted to the best of its ability to comply with requests for necessary information. Where a party has not cooperated, Commerce and the Commission may employ adverse inferences about the information to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully.

SAA at 869-70, reprinted in 1994 U.S.C.C.A.N. 4040, 4198-99.  * * *

Before making an adverse inference, Commerce must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information. Compliance with the "best of its ability" standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. While the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping. It assumes that importers are familiar with the rules and regulations that apply to the import activities undertaken and requires that importers, to avoid a risk of an adverse inference determination in responding to Commerce's inquiries: (a) take reasonable steps to keep and maintain full and complete records documenting the information that a reasonable importer should anticipate being called upon to produce; (b) have familiarity with all of the records it maintains in its possession, custody, or control; and (c) conduct prompt, careful, and comprehensive investigations of all relevant records that refer or relate to the imports in question to the full extent of the importers' ability to do so.

*Nippon Steel* at 1380 – 1383.

In the case of *Nippon Steel*, the plaintiff was ultimately found to have the records in its possession, and thus, as the plaintiff had control of the records, the failure to provide them was a failure to use best efforts.  However, the test enumerated clearly states that if a party does not have or maintain a particular record,

- 13 -

they cannot be found to have failed to use best efforts for failing to provide such record.   As discussed below, AM Stone's conduct, in contrast, met all of the requirements for best efforts and cooperation.

1. *AM Stone was fully cooperative and answered all of the Department Questionnaires*

The first prerequisite for the application of AFA is a finding that a party did not use its "best efforts" in responding to the Department.   While, as discussed above, the term "best efforts" is somewhat nebulous, under any definition of "best efforts" AM Stone was fully cooperative.   As set forth above, best efforts include:

- Reasonable steps to maintain full and complete records – AM Stone did this and was able to provide all of the relevant information from its own records at a high level of detail.  There is no allegation or claim that any of the missing information should have been in the possession of AM Stone.
- Have familiarity with records in its possession, custody or control – AM Stone had such familiarity.   AM Stone knows the records in its possession, custody and control and provided those documents requested by the Department.  AM Stone, in the ordinary course of business, would have no information about the details of the production including input.
- Conduct prompt, careful and comprehensive investigations of all relevant records to the full extent of the importers ability to do so – AM Stone did just that.   It carefully and comprehensively provided the records in its control

The Department has not claimed that AM Stone itself failed to cooperate. Rather the apparent lack of cooperation was the result of unrelated third parties.

2.  *AM Stone attempted to obtain information from its third party suppliers, but was unable to obtain full cooperation*

The inability of a respondent to obtain information from unrelated third parties is neither new nor unique.   In the complex business world of today producers frequently obtain materials and services from third parties.   Historically, the Department has refused to find that the failure of third parties to provide information does not establish non-cooperation of the respondent.   Recently the Department has refined this practice to require that parties obtain information from unrelated third parties when the parties have the power to do so.    This recent precedent does not compel AM Stone to provide this third-party data to demonstrate cooperation.   AM Stone does not have the market power to obtain this information.   (See AM Stone's response of June 14, 2024 at Cover letter page 1 (P.R. 52) and narrative response at pages 1 – 3 (P.R. 52)).   AM Stone only had [5] transactions, is no longer doing business with these third parties, some of these third parties have ceased operations, (See AM Stone's Response of June 14, 2024 at page 10, C.R. 10) and AM Stone was never a large customer.

The Court has held that Commerce must consider the evidence showing why the efforts for cooperation failed and whether the respondent had the practical ability to force cooperation.    The Court's decision in *Venus Wire Industries Pvt. Ltd. v United States,* 417 F.Supp.3d 1289 (Ct. Int'l Trade 2020) is instructive.   In *Venus* the issue was whether the e-mails from Venus to its  unrelated suppliers served as  a sufficiently strong inducement to  cooperate.   In rejecting the application of AFA, the Court stated in relevant part:

> For its conclusion that Venus failed to act to the best of its ability to obtain its unaffiliated suppliers' cost information, Commerce relied on its subsidiary finding that Venus's emails to its suppliers "did not serve as a strong inducement to cooperate." However, Commerce's reliance on *Mueller's* observation that the existence of a buyer-seller

relationship means that an exporter could potentially refuse to do business with its supplier to induce cooperation placed undue emphasis on Venus's warnings to its suppliers, thereby truncating the *Mueller* analysis and leading the agency to disregard relevant record evidence. Thus, as discussed below, Commerce's determination is unsupported by substantial evidence and not in accordance with the law.

To begin with, Commerce created an arbitrary linguistic line when it measured Venus's degree of cooperation based on Venus's use of a certain word in its emails to unaffiliated suppliers. While Commerce clearly permits some equivocation by a respondent in its attempts to induce cooperation, the agency has not provided any explanation supporting the distinction it seeks to draw in this case.

Further, while *Mueller* recognizes that an unwillingness to export goods produced by an uncooperative supplier "would potentially induce {the supplier} to cooperate," the appellate court also stated that "if the {respondent} has no control over the noncooperating suppliers, a **resulting adverse inference is potentially unfair to the {respondent}**." The concept of "control," as discussed in *Mueller*, does not require actual control, but, instead, it requires Commerce to consider record evidence concerning the **practical ability of a respondent to induce the supplier's cooperation**.

Here, Commerce did not adequately consider evidence tending to show that Venus's efforts to induce cooperation failed, at least in part, because of circumstances beyond Venus's control; to wit, the suppliers' own concerns that providing the cost information did not serve the suppliers' respective interests. Moreover, Commerce failed to point to any evidence indicating that Venus could induce its unaffiliated suppliers' cooperation. Instead, Commerce appeared to assume that Venus had leverage over its unaffiliated suppliers and simply failed to properly apply it. Commerce's reasoning is inconsistent with *Mueller*, which recognizes the possibility of inducing cooperation, but not the certainty.

*Venus Wire Industries Pvt. Ltd. v United States,* 471 F.Supp.3d 1289 (Ct. Int'l Trade 2020) at 1307-1308.

The AM Stone factual situation closely parallels that in *Venus*.  AM Stone, just like the plaintiff in *Venus*, tried to obtain the information from the unrelated third parties, but was unable to do so.  There is no evidence that AM Stone had any leverage over its unaffiliated suppliers to induce cooperation.  AM Stone sought the cooperation of these third parties, as implicitly directed by the Department, obtained some information, but ultimately failed to obtain all of this information. AM Stone's efforts to obtain this information constituted best efforts by AM Stone, and AM Stone should not be punished by the application of adverse facts to it for this missing information.

Accordingly, the Department should have used neutral facts in filling in the gap and allowed AM Stone to certify as to the origin of its products.   AM Stone would have certified that such products were not the product of China and would not have been responsible for antidumping and countervailing duties.

### 3. Court Precedent Does Not Require a Party to Provide Information Not in Its Possession and Which It Cannot Reasonably Obtain.

The Courts have long held that a party can only be required to provide the information that is actually in the possession of the party or is information which the party would have been expected to create and maintain in the ordinary course of business.  In examining the "best information available" rules (the predecessor to AFA) the Court in *Olympic Adhesives, Inc. v. United States,* 899 F. 2d 1565 (Fed. Cir. 1990) stated:

> But we agree with Olympic that this "incompleteness" or "deficiency" is not attributable to any deficiency in the answers provided by Extraco. The ITA may not properly conclude that resort to the best information rule is justified in circumstances where a questionnaire is sent and completely answered, just because the ITA concludes that the answers do not definitely resolve the overall issue presented. Although the ITA may properly request additional supplemental information, if needed,

to fully resolve the issue, section 1677e(b) clearly requires noncompliance with an information request before resort to the best information rule is justified, whether due to refusal or mere inability. See, e.g., *Daewoo Elec. Co. v. United States*, 712 F.Supp. 931, 944 (Ct.Int'l Trade 1989). The ITA suggests that Extraco should have made efforts apart from the questionnaire to rebut the allegations of fictitious sales. **However, section 1677e(b) does not place that obligation on the submitter. To avoid the threat of § 1677e(b), a submitter need only provide complete answers to the questions presented in an information request.**

*Olympic Adhesives, Inc* at 1574. (Citations omitted.)

Subsequent Court decisions have further expanded upon *Olympic* and further confirmed that the Department does not have unlimited discretion and cannot resort of facts available where the requested information does not exist.   In *Peer Bearing Co. v. United States*, 182 F.Supp.2d 1285 (Ct. Int'l Trade 2001) the Court stated:

Consequently, Commerce enjoys very broad, although not unlimited, discretion with regard to the propriety of its use of BIA. See generally, *Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565 (Fed. Cir.1990) (acknowledging Commerce's broad discretion with regard to the use of facts available but pointing out that Commerce's resort to facts available is an abuse of discretion where the information Commerce requests does not and could not exist).

*Peer Bearing* at 1295.[2]

In the case at bar, there is no allegation that the information not provided by AM Stone was information in the possession of AM Stone.  Quite to the contrary, the requested information was the confidential information of the unrelated supplier. Simply put, at least with respect to AM Stone, the information requested by the Department, but not provided, was not in the possession or control of AM Stone. Thus, at least with respect to AM Stone, such information does not and could not

---

[2] See also, *Ferrostaal Metals Gmbh v. United States*, 518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) at 1374,

exist.

Critically, notwithstanding its lack of relationship, AM Stone was able to procure the above-described documents and data for the Department's review which related to AM Stone's importations.  It is neither extraordinary nor unusual that an unrelated party would provide to one of its customers data about other unrelated customers.  To require an unrelated third party (the exporter) to provide information which related to a third party customer (the exporter's other customers) to another third party (AM Stone) is anticipating a degree of cooperation which goes far beyond "reasonable".   The documents that AM Stone did obtain and provide to Commerce undeniably support a Malaysian country of origin finding for the quartz surface products. (P.R. 52 and C.R. 10)  AM Stone did its utmost and thus, strictly applying the text of this statute, it means that adverse inference cannot be taken against AM Stone.

AM Stone clearly showed the nexus between Malaysian production and the importation of said slab by providing convincing inside and outside images of Resstone's factory, the raw material stock in said factory, and the production process which takes place in said factory. The Department concedes that AM Stone provided "a narrative of its understanding of Resstone's manufacturing process and photos of certain parts of the manufacturing process". (P.R. 64 and 65) Commerce could have easily corroborated this information instead of citing to absence of some of the documents needed as substantiating information.

AM Stone concedes that since facts are missing, and to the extent that the facts are relevant, the Department must fill the gaps, the Department  is entitled to fill these gaps with facts available.  However, as AM Stone was cooperative, with respect to AM Stone, as discussed above, such gaps must be filled with **neutral facts** available.   In this case, the most appropriate action is to fill the gaps with neutral facts available for AM Stone and to allow AM Stone to certify that these products

are of Malaysian Origin while applying Adverse Facts and taking adverse inferences to the uncooperative foreign producer and to continue to deny them the right to certify their goods as products of Malaysia. It should be noted that the Department, under the certification process allows most importers to certify that its products are not a product of China and are a product of Malaysia. Simply put, AM Stone wants to be treated as any importer of quartz from Malaysia. AM Stone was denied this opportunity in the investigation because its exporter did not supply a quantity and value submission and thus was found to be uncooperative. However, the loss of the ability to certify did not mean that such product was "automatically" the product of China. Rather this issue could be revisited in the administrative review. Allowing AM Stone to certify for the shipments at issue, while denying the exporter's customers to certify going forward would constitute the fairest balancing of adverse and neutral facts.

## VIII.    <u>CONCLUSION</u>

In conclusion, the facts demonstrate that AM Stone fully cooperated in this review and submitted all of the information in its control.  To the extent that information was missing from the record, such information was missing from the record due to the non-cooperation of third parties unrelated to Plaintiff AM Stone. The non-cooperation of these third parties should not result in the taking of facts available with adverse inferences against AM Stone.  The Court should remand this matter to the Department with direction that AM Stone be permitted to certify that the product imported by AM Stone is of origin of Malaysia, not China.

Respectfully submitted,

Dated: July 27, 2025

/s/ David J. Craven
David Craven
Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 709-8506

*Counsel to Plaintiff*