24-00241

_____

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

_____

AM STONE & CABINETS, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant

_____

Defendant's Response To Plaintiff's
Rule 56.2 Motion For Judgment On The Agency Record

_____

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

ANNE M. DELMARE
Trial Attorney
Commercial Litigation Branch,
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, DC  20044
Telephone: (202) 305-0531
E-mail: Anne.M.Delmare@usdoj.gov

December 17, 2025                            *Attorneys for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................... ii

STATEMENT PURSUANT TO RULE 56.2 ......................................................................... 1

    I.    Administrative Determinations Under Review ...................................................... 1

    II.    Issues Presented for Review.................................................................................. 2

STATEMENT OF FACTS ................................................................................................... 2

SUMMARY OF THE ARGUMENT................................................................................... 6

ARGUMENT ........................................................................................................................ 7

    I.    Standard Of Review............................................................................................... 7

    II.    Commerce Reasonably Determined That AM Stone Did Not Provide Sufficient Information To Establish That Its Imported Quartz Slabs Were Produced In Malaysia................................................................................................................. 7

    III.    Commerce Did Not Apply Facts Available with Adverse Inference Under 19 U.S.C. § 1677e to AM Stone ....................................................................... 13

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007) ...................................................... 7, 8

*Consol. Edison Co. of N.Y. v. NLRB*,
    305 U.S. 197 (1938) ................................................................... 7

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ................................................................... 7

*Creswell Trading Co. Inc. v. U.S.*,
    15 F.3d 1054 (Fed. Cir. 1994) ...................................................... 13

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) .................................................................. 13

*Mannesmannrohen-Werke AG v. United States*,
    77 F. Supp.2d 1302 (Ct. Intl. Trade 1999) ...................................... 14

*Ningbo Dafa Chem. Fiber Co. v. United States*,
    580 F.3d 1247 (Fed. Cir. 2009) ..................................................... 7

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) .................................................... 13

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ................................................................... 7

*Venus Wire Industries Pvt. Ltd. v United States*,
    417 F. Supp.3d 1289 (Ct. Intl. Trade 2020) ................................. 13, 14

*Zenith Electronics Corp. v. United States*,
    988 F.2d 1573 (Fed. Cir. 1993) .................................................... 13

**STATUTES**

19 U.S.C. section ........................................................................ 13

19 U.S.C. § 1516a ................................................................... 7, 14

19 U.S.C. § 1677e ................................................... 2, 6, 9, 10, 12, 13

**REGULATIONS**

19 C.F.R. § 351.228 ................................................................... 2, 3

84 Fed. Reg. 33,053 ...................................................................... 2

87 Fed. Reg. 64,009-11 ......................................................... 2, 9, 14, 15

88 Fed. Reg. 42,693 ...................................................................... 3

88 Fed. Reg. 62,322 ............................................................................................... 3

89 Fed. Reg. 14,055 ............................................................................................... 4

89 Fed. Reg. 63,400 ............................................................................................ 4, 5

89 Fed. Reg. 64,010 ............................................................................................ 8, 9

89 Fed. Reg. 92,622 ...................................................................................... 1, 2, 5, 6

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| AM STONE & CABINETS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-00241 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States,

respectfully submits this response to the motion for judgment upon the agency record filed by

plaintiff AM Stone & Cabinets, Inc. (AM Stone).  AM Stone challenges the Department of

Commerce's (Commerce) final results of the 2021-23 administrative review of the antidumping

duty (AD) order and the 2021-22 administrative review of the countervailing duty (CVD) order

on certain quartz surface products from the People's Republic of China (China).  Because the

final results are supported by substantial evidence and otherwise in accordance with law, we

respectfully request that the Court reject AM Stone's motion, sustain the final results of the

reviews, and enter judgment in favor of the United States.

**STATEMENT PURSUANT TO RULE 56.2**

**I.      Administrative Determinations Under Review**

The administrative determinations under review are *Certain Quartz Surface Products*

*From the People's Republic of China: Final Results of 2021-2023 Antidumping Duty and 2021-*

*2022 Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 92,622 (Dep't of Commerce

Nov. 22, 2024) (*Final Results*) (P.R. 76), and accompanying Issues and Decision Memorandum (IDM) (P.R. 75).  The period of review (POR) covered by the antidumping duty review is November 4, 2021, through June 30, 2023, and the POR covered by the countervailing duty review is November 4, 2021, through December 31, 2022.  *Id.*

## II.    **Issues Presented for Review**

1.    Whether Commerce reasonably determined that AM Stone did not provide sufficient information to establish that its imported quartz slabs were produced in Malaysia.

2.    Whether Commerce applied facts available with adverse inferences under 19 U.S.C. § 1677e(a)-(b) against AM Stone.

## STATEMENT OF FACTS

On July 19, 2019, Commerce published the antidumping and countervailing duty orders on certain quartz surface products from China.  *Certain Quartz Surface Products from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 33,053 (Dep't of Commerce July 11, 2019) (*Orders*).  On October 21, 2022, in self-initiated scope and circumvention inquiries separate to the administrative reviews at bar, Commerce published in the *Federal Register* a final scope ruling and rescission of circumvention inquiry, finding that imports of quartz slab manufactured in China and processed in Malaysia are covered by the AD and CVD *Orders* on quartz surface products from China.  *See Certain Quartz Surface Products from the People's Republic of China: Final Scope Ruling on Malaysian Processed Quartz Slab and Recission of the Circumvention Inquiry,* 87 Fed. Reg. 64,009 (Dep't of Commerce October 21, 2022) (*Malaysia Final Scope Ruling*).

As part of this determination, pursuant to 19 C.F.R. § 351.228, Commerce implemented a certification requirement for all imports of quartz surface products from Malaysia, effective

November 4, 2021, and directed U.S. Customs and Border Protection (CBP) to suspend liquidation and require cash deposit for entries subject to the scope inquiry retroactive to this same date. *Id.* at 64,010. Additionally, Commerce determined that Universal Quartz, and several other companies, were not eligible for the scope certification process because they did not fully participate in the proceeding. *Id.* Commerce stated that such ineligible companies may request reconsideration of their exclusion from the certification process in future segments of the proceeding, including by means of an administrative review. *Id.* at 64,010-11.

On July 3, 2023, Commerce notified interested parties of the opportunity to request administrative reviews of the *Orders*. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List*, 88 Fed. Reg. 42,693 (Dep't of Commerce July 3, 2023). In response, several interested parties, including AM Stone, requested administrative reviews of the *Orders*. *See* P.R. 1 (AM Stone's Letter, "Request for Administrative Review" (July 26, 2023)). In its request, AM Stone, identifying itself as an importer of quartz products from Malaysia, requested review of its imports from Universal Quartz. *Id.* On September 11, 2023, Commerce initiated administrative reviews of the AD and CVD *Orders*. *See* P.R. 6 (*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 62,322).

On December 19, 2023, Commerce released U.S. import data from CBP and provided an opportunity for interested parties to comment on the data. *See* C.R. 1, P.R. 15 (Memorandum, "Release of AD Customs Entry Data from U.S. Customs and Border Protection," dated December 19, 2023); *see also id.* (Memorandum, "Release of CVD Customs Entry Data from U.S. Customs and Border Protection," dated December 19, 2023).

On February 26, 2024, Commerce extended the PORs of both the antidumping and countervailing duty reviews back to November 4, 2021, the effective date of the certification requirement, to provide parties with an opportunity to request administrative reviews of entries back to that date. *See* P.R. 20 (*Certain Quartz Surface Products From the People's Republic of China: Expansion of the Period of Review and Supplemental Opportunity To Request Administrative Review*, 89 Fed. Reg. 14,055 (Dep't of Commerce Feb. 26, 2024)).

On May 13, 2024, Commerce issued an initial questionnaire to AM Stone regarding Universal Quartz's certification eligibility. *See* P.R. 30 (Commerce's Letter, "Certification Eligibility Questionnaire for Universal Quartz," dated May 13, 2024 (Initial Questionnaire)). On July 17, 2024, Commerce received a questionnaire response from AM Stone. *See* C.R. 10-11, P.R. 52 (AM Stone's Letter, "Initial Questionnaire Response," dated June 17, 2024 (Universal Quartz's IQR)). On June 21, 2024, Commerce issued a supplemental questionnaire to AM Stone regarding Universal Quartz. *See* P.R. 54 (Commerce's Letter, "Supplemental Certification Eligibility Questionnaire for Universal Quartz," dated June 21, 2024). On July 3, 2024, Commerce received a supplemental questionnaire response from AM Stone. *See* C.R. 14, P.R. 62 (AM Stone's Letter, "Supplemental Questionnaire Response," dated July 3, 2024 (Universal Quartz's SQR).

On August 5, 2024, Commerce published the *Preliminary Results* of the administrative reviews. *See Certain Quartz Surface Products from the People's Republic of China: Preliminary Results of 2021–2023 Antidumping Duty and 2021–2022 Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 63,400 (Dep't of Commerce August 5, 2024) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 65). Commerce determined that AM Stone, as the importer who requested a review of Universal Quartz's

certification eligibility, did not provide the necessary information to show that Universal

Quartz's exports into the United States during the POR did not contain Chinese origin slab.

PDM at 6. Thus, Commerce preliminarily found that Universal Quartz continued to be ineligible

to participate in the certification process. *Id.* at 7. Specifically, Commerce noted that AM Stone

did not provide the full universe of Universal Quartz's entries during the POR. *Id.* at 6.

Additionally, Commerce explained that AM Stone provided insufficient documentation of the

production process of Resstone Manufacturing Sdn. (Resstone), a manufacturer of merchandise

exported by Universal Quartz. *Id.* Accordingly, AM Stone was unable to demonstrate that

Resstone had the necessary machinery to manufacture quartz slab in Malaysia or that Resstone

produced all of the quartz slab that Universal Quartz exported. PDM at 6-7 (citing IQR at 11;

SQR at 11.)

On September 6, 2024, AM Stone submitted an administrative case brief concerning

Commerce's preliminary results. *See* P.R. 71 (AM Stone's Letter, "Case Brief," dated

September 6, 2024 (AM Stone's Case Brief)).

On November 22, 2024, Commerce published the *Final Results* of the administrative

reviews. *See Certain Quartz Surface Products From the People's Republic of China: Final

Results of 2021–2023 Antidumping Duty and 2021–2022 Countervailing Duty Administrative

Reviews*, (Dept. of Commerce Nov. 22, 2024), 89 Fed. Reg. 92,622, and accompanying Issues

and Decision Memorandum (IDM) (P.R. 75). In the *Final Results*, Commerce continued to find

that AM Stone did not provide sufficient information to demonstrate that the quartz surface

products exported by Universal Quartz did not contain Chinese-origin quartz slab. IDM at 4.

Commerce reiterated that it could not consider Universal Quartz's eligibility to participate in the

certification scheme without information regarding the full universe of the manufacturers

which produced the merchandise that Universal Quartz exported.  IDM at 5.  Furthermore, regarding the limited pool of AM Stone's entries involving quartz slab produced by Resstone, Commerce explained that AM Stone did not provide or cite record evidence showing that those entries did not contain Chinese-origin quartz slab.  IDM at 5.  Furthermore, Commerce explained that, contrary to AM Stone's claim, it did not apply adverse facts available (AFA) in barring Universal Quartz from the certification regime.  *Id.* at 7.  Rather, Commerce determined that Universal Quartz continued to be ineligible for the certification regime on the basis that there was insufficient information on the record showing that its POR entries of quartz surface products did not contain Chinese-origin quartz slab.  IDM at 7.

## SUMMARY OF ARGUMENT

Commerce's determination that Universal Quartz remained ineligible to participate in the certification process established in the *Malaysia Processed* scope proceeding was lawful and supported by substantial evidence.  In the underlying review, in which AM Stone requested reevaluation of Universal Quartz's certification eligibility, the burden was on AM Stone to rebut the presumption that Universal Quartz did not use Chinese-origin quartz slab in its entries during the POR.  Because AM Stone failed to provide such information to overcome this presumption, Commerce reasonably continued to find that Universal Quartz was ineligible to participate in the certification process.  Furthermore, despite AM Stone's assertion that Commerce impermissibly applied facts available (AFA) with an adverse inference, Commerce did not apply AFA under 19 U.S.C. § 1677e(a)-(b).

<u>**ARGUMENT**</u>

I.    **Standard of Review**

The Court upholds Commerce determinations that are supported "by substantial evidence

on the record" and otherwise "in accordance with law{.}"  19 U.S.C. § 1516a(b)(1)(B)(i).

Commerce's factual findings "are conclusive unless unsupported by substantial evidence."

*United States v. Eurodif S.A.*, 555 U.S. 305, 316 & n.6 (2009) (citation omitted)).  "Substantial

evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Ningbo*

*Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009).  Even if the Court

may draw two inconsistent conclusions from the evidence contained in the record, doing so

"does not prevent an administrative agency's finding from being supported by substantial

evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted).  An

agency decision may not be overturned "simply because the reviewing court would have reached

a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291,

1296 (Fed. Cir. 2007) (citations omitted).

II.    **Commerce Reasonably Determined That AM Stone Did Not Provide Sufficient**
       **Information To Establish That Its Imported Quartz Slabs Were Produced In**
       **Malaysia**

AM Stone failed to establish that Universal Quartz did not use Chinese-origin slab in its

entries during the POR, and accordingly, Commerce properly determined that Universal Quartz

was not eligible to participate in the certification process.  IDM at 4-6.  As detailed below,

Commerce requested various information which was necessary to determine if Chinese-origin

quartz slab was used in the production process of the merchandise exported by Universal Quartz.

*Id.* at 4.  Despite these requests, AM Stone did not provide information that Commerce

requested, and therefore, the record ultimately lacked critical information that was necessary for Commerce to analyze Universal Quartz's exports during the POR.  *Id.*

AM Stone claims that it submitted all information available to it and thus did not withhold information from Commerce.  Pl. Br. at 7.  AM Stone avers that, as a whole, the information it submitted demonstrates that its imported quartz slab was manufactured in Malaysia, and therefore, is not subject to the *Orders* which cover quartz surface products from China.  *Id.*  AM Stone's claim, however, is undercut by a lack of information on the record that Commerce requested that would be sufficient to support a restoration of certification eligibility, a fact that AM Stone concedes in its brief.  Pl. Br. at 19 ("AM Stone concedes that since facts are missing, and to the extent that the facts are relevant, the Department must fill the gaps, the Department is entitled to fill these gaps with facts available.").

Further, AM Stone's emphasis on the failure of Universal Quartz is misguided and does not ameliorate AM Stone's failure to overcome the presumption against Universal Quartz set forth in the *Malaysia Final Scope Ruling* that its exports contained Chinese-origin quartz slab. 89 Fed. Reg. 64,010.  Critically, AM Stone fails to understand that Commerce's reevaluation of certification eligibility is not with regard to AM Stone's imports.  Rather, the inquiry in this administrative review is into the exporter's certification eligibility.  *See* IDM at 4 ("[F]or the importer to be able to certify, it must maintain the exporter's certification.  Thus, the exporter is necessarily the nexus of Commerce's evaluation of a company's certification eligibility."); PDM at 4-5 (discussing that the instant administrative review was conducted for the purpose of reevaluating the certification eligibility of four Malaysian exporters, including Universal Quartz, which Commerce previously deemed ineligible to participate in the certification process in the *Malaysia Final Scope Ruling*).

As discussed above, in 2022, Commerce completed a scope inquiry and determined that imports of quartz surface products processed in Malaysia using quartz slab manufactured in China is covered by the scope of the *Orders* on quartz surface products from China. *See generally*, *Malaysia Final Scope Ruling*. As a result of the *Malaysia Final Scope Ruling*, Commerce implemented a certification requirement for all imports of quartz surface products from Malaysia. *Id.* at 64,010. Specifically, for imports of quartz surface products to be exempt from the scope of the *Orders*, and therefore free of AD/CVD duties, Commerce required importers to maintain an Exporter Certification with supporting documents to show that the products were not produced using Chinese quartz slab. 87 Fed. Reg. 64,010. Neither Universal Quartz nor Resstone responded to Commerce's requests for information relating to the scope inquiry. *Id.* Pursuant to 19 U.S.C. § 1677e(a) and (b), in the *Malaysia Final Scope Ruling*, Commerce relied on facts available with adverse inferences to determine that the merchandise Universal Quartz and Resstone exported to the United States from Malaysia contained quartz slab manufactured in China. *Id.* Consequently, Commerce determined that Universal Quartz and Resstone were ineligible to participate in the certification process established by the scope ruling. *Id.* Commerce clarified that companies found ineligible in the *Malaysia Final Scope Ruling* could seek reconsideration of their exclusion from the certification process in future segments of the proceeding, including by means of administrative review. *Id.*

In this administrative review, Commerce reevaluated Universal Quartz's eligibility to participate in the certification process and reasonably determined that AM Stone provided insufficient information to demonstrate that Universal Quartz did not use Chinese-origin quartz slab in its POR entries. IDM at 5. Commerce requested information from the importers which requested a review of their corresponding exporters, Bada Industries, Karina Stone, Unique

Stone, and Universal Quartz, to reconsider eligibility in the certification process. *See generally*, Initial Questionnaire. Commerce requested that the importers provide: (1) their exporter's POR entries of quartz surface products; and (2) the corresponding manufacturer's production of these quartz surface products. *Id.*; *see also* IDM at 4. Specifically, Commerce requested: (1) the universe of the exporter's sales to the United States (as well as how the exporter tracked the country of origin of its exports); (2) information related to the exporter's and manufacturer's operational and legal structures, as well as their accounting and financial practices; and (3) the manufacturer's production process and how it tracked the country of origin of the quartz slab it used. IDM at 4. Such requested information was necessary to Commerce's reconsideration of Universal Quartz's eligibility. Commerce not only required information to link entries of subject merchandise to the manufacturer in order to determine whether Universal Quartz's exports used Chinese-origin slab, but also, such information is exactly the type of information importers of quartz surface products are required to maintain under the certification regime. *Id.* at 4 (citing *Malaysia Final Scope Ruling*, 87 FR at 64011) ("The importer is required to complete and maintain the importer certification, attached as Appendix III, and retain all supporting documentation (*e.g.*, invoice, purchase order, production records, *etc.*)). In other words, even if Universal Quartz was deemed eligible to participate in certification in the original proceeding, it was reasonable for Commerce to expect AM Stone to provide such information from Universal Quartz given that importer's provision of information from the exporter is an inherent part of the certification process.

Commerce first requested an Excel spreadsheet for each POR entry of quartz surface products from Universal Quartz. *See* IQR at 1. While AM Stone states that it provided an Excel worksheet responding to Commerce's request, *see* Pl. Br. at 7, ultimately, the worksheet

submitted only covered shipments that Universal Quartz exported to AM Stone, a fact that AM Stone admits in its questionnaire responses. *See* IQR at 1; SQR at 1. Commerce's reevaluation of Universal Quartz's certification eligibility required information on all of its exports to the United States, not just those through AM Stone, because without this information, Commerce could not begin to determine if the products Universal Quartz exported contained Chinese-origin quartz slab. IDM at 5. AM Stone, however, failed to provide the full universe of Universal Quartz's POR entries to the United States, as requested. PDM at 6.

Second, even assuming *arguendo* that Commerce should have limited its review to AM Stone's entries during the POR, AM Stone reported that Resstone was a manufacturer of the quartz slab Universal Quartz exported, but it failed to respond fully to Commerce's inquiries regarding Resstone. IQR at 2-3. While AM Stone provided a narrative description of Resstone's role in the manufacturing process and several photos of Resstone's factory, it did not provide production records linked to its imports demonstrating that the merchandise was specifically produced in Malaysia, nor did AM Stone provide evidence of Resstone's purchases of material inputs that could be tied to AM Stone's purchases (information which would demonstrate that its imports were manufactured in Malaysia). *See* IDM at 5; IQR at 4, 10; *see also* Pl. Br. at 7. Furthermore, AM Stone did not provide requested information regarding Resstone's production processes, such as whether Resstone owned mixing machines, vibro-compression machines, or ovens, all of which are necessary to manufacture quartz surface products from their raw materials. *See* IQR at 8. As Commerce explained, such evidence would serve as proof that Resstone manufactured quartz slab in Malaysia. IDM at 5 (citing AM Stone's IQR at 7-11; and AM Stone's SQR at 3-5.). Despite AM Stone's contention that it provided clear photos of Resstone's production factory and production process, *see* Pl. Br. at 7, as discussed, the

photographs do not show any machinery that is necessary to produce quartz surface products, and AM Stone did not demonstrate that Resstone manufactured quartz slab from raw materials. *See* IDM at 6; SQR at Exhibit 2s.

Finally, AM Stone did not provide requested information concerning Universal Quartz's corporate structure. Specifically, in Commerce's initial questionnaire, Commerce requested information relating to Universal Quartz's corporate structure, accounting, and financial practices. *See* Initial Questionnaire at 5-6. Additionally, Commerce requested an inventory movement schedule related to quartz slab purchases and documentation related to the production of a U.S. entry. *Id.* at 4 and 8. AM Stone did not respond to these requests for information, and simply cited Universal Quartz's failure to respond. *See* IQR at 4, 10-11. AM Stone notes that it provided a business report from EMIS on Resstone's company structure, officers, financials, and other key elements in its SQR at Exhibit 1S. *See* Pl. Br. at 7. To the extent that this report was responsive to certain requests for information from Commerce, the report did not include information showing that Resstone produced quartz surface products in Malaysia that did not contain Chinese-origin slab. *See* Pl. Br. at 7. Furthermore, Resstone is a single manufacturer that supplied Universal Quartz, and the record did not show the full universe of manufacturers which produced the merchandise exported by Universal Quartz. AM Stone's provision of some information on Resstone does not excuse its lack of submitted information regarding the full extent of the manufacturers supplying Universal Quartz, which was the exporter under review.

As Commerce explained in its PDM, a company previously determined ineligible for the certification process must provide information to Commerce to overcome the presumption that the quartz surface products it exported to the United States contain Chinese-origin quartz slab. PDM at 5. In the instant administrative review, AM Stone is the company requesting

reconsideration of Universal Quartz's eligibility for the certification process; therefore, the burden to produce such information to rebut Commerce's presumption against Universal Quartz was on AM Stone as the requesting party. *See Zenith Electronics Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) (stating that the burden of evidentiary production belongs to the party that possesses the necessary information); *see also Creswell Trading Co. Inc. v. U.S.*, 15 F.3d 1054, 1060 (Fed. Cir. 1994) ("{t}ypically, the burden of production is initially upon the party who bears the ultimate burden of proof and generally requires that a party produce sufficient evidence to support a finding in favor of that party."). AM Stone's repeated invocation of Universal Quartz's nonresponse to questionnaires does not absolve AM Stone's failure to provide information to rebut the presumption that Universal Quartz exported quartz surface products containing Chinese-origin quartz slab to the United States during the POR.

## III. Commerce Did Not Apply Facts Available with Adverse Inference Under 19 U.S.C. § 1677e to AM Stone

AM Stone dedicates much of its brief to advancing its proposition that Commerce employed an improper adverse inference against it in reaching its determination. *See generally*, Pl. Br. at 9-20. To be clear, Commerce did not apply facts available with an adverse inference at all pursuant to 19 U.S.C. sections 1677(a) or (b). In its IDM, Commerce explained that its determination to continue to bar Universal Quartz from the certification process was grounded in the information on the record, and not on an application of AFA. IDM at 7. Nowhere in the PDM or IDM did Commerce invoke facts available or adverse inferences under 19 U.S.C. sections 1677e(a) or (b) of the Act. Accordingly, AM Stone's references to *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024); *Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003); *Venus Wire Industries Pvt. Ltd. v United States*, 417 F. Supp.3d 1289 (Ct.

Intl. Trade 2020) and *Mannesmannrohen-Werke AG v. United States*, 77 F. Supp.2d 1302 (Ct. Intl. Trade 1999) are inapplicable to the present case.

It is the case that Universal Quartz's initial ineligibility to participate in the certification process was indeed based on facts available with an adverse inference given Universal Quartz's nonresponse to Commerce's requests for information in the *Malaysia Final Scope Ruling*. 87 Fed. Reg. at 64,010. AM Stone, however, does not challenge the *Malaysia Final Scope Ruling* here, and indeed, the window to challenge that determination expired in November 2022. *See* 19 U.S.C. § 1516a. Again, Commerce's continued finding that Universal Quartz was ineligible to participate in the certification process was based on a lack of information to rebut the presumption against it, not AFA.

AM Stone states that it seeks to be treated like any importer of quartz from Malaysia and was denied its desired outcome based on its exporter not providing requested information to Commerce. Pl. Br. at 20. Commerce, however, treated AM Stone the same as any importer that did not provide information necessary to demonstrate that its exporter's subject merchandise did not contain Chinese-origin slab. As Commerce explained, under the certification process, not only must the exporter be able to certify that its exports do not contain Chinese-origin quartz slab, but also the importer must maintain the exporter's certification when providing its own. IDM at 6.

AM Stone suggests that the fairest balancing of adverse and neutral facts would be to allow certification of their shipments at issue, while denying the exporter's customers to certify going forward. Pl. Br. at 20. As discussed above, the underlying administrative review was conducted solely for the purposes of reevaluating the certification eligibility of four Malaysian *exporters* that were previously deemed ineligible to participate in the certification process. IDM

14

at 4; PDM at 5.  For an importer to be able to certify, it must maintain the exporter's

certification.  *See Malaysia Processed,* 87 Fed. Reg. at 64011 ("The importer is required to

complete and maintain the importer certification, attached as Appendix III, and retain all

supporting documentation (*e.g.*, invoice, purchase order, production records, *etc.*)).  Accordingly,

the locus of Commerce's examination in this administrative review is Universal Quartz as an

exporter, and not AM Stone's as in importer.  IDM at 4.  Even if, *arguendo*, Commerce should

have limited the scope of its review to AM Stone's entries, as discussed above, there is

inadequate information on the record to show that the more limited pool of AM Stone's entries

do not contain Chinese-origin quartz slab.  IDM at 5.  In sum, the certification process required

information regarding Universal Quartz, such information was missing from the record, as AM

Stone itself recognizes, and Commerce accordingly denied Universal Quartz's eligibility for

certification.

## CONCLUSION

For these reasons, we respectfully request that this Court sustain Commerce's final

results and enter judgment in favor of the United States.


Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

*/s/ Franklin E. White, Jr.*
FRANKLIN E. WHITE, JR.
Assistant Director

*/s/ Anne M. Delmare*
ANNE M. DELMARE

Trial Attorney
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 305-0531
Email:  Anne.M.Delmare@usdoj.gov

OF COUNSEL

Jack Dunkelman
U.S. Department of Commerce
1401 Constitution Avenue, NW.
Suite 3629
Washington, DC 20009
(202) 306-4996
Email: jack.dunkelman@trade.gov

December 17, 2025                    *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, the brief contains a total of 4,406 words.

<table>
<tr><td></td><td>/s/ Anne M. Delmare</td></tr>
<tr><td>December 17, 2025</td><td>ANNE M. DELMARE</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 17th day of December, 2025, a copy of the foregoing "Defendant's Response To Plaintiff's Rule 56.2 Motion For Judgment On The Agency Record" was filed electronically.

X  This filing was served electronically on all parties by operation of the Court's electronic filing system.

/s/ Anne M. Delmare
ANNE M. DELMARE

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

|  |  |
|---|---|
| AM STONE & CABINETS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Court No. 24-00241 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment upon the agency record, responses thereto, replies, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained.

Dated:_____                                   _____
                                                                                                JUDGE