Slip Op. 26-50

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| AM STONE & CABINETS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant. | Before: Mark A. Barnett, Chief Judge<br>Court No. 24-00241 |

**<u>OPINION</u>**

[Sustaining the U.S. Department of Commerce's final results in the administrative reviews of the antidumping and countervailing duty orders on certain quartz surface products from the People's Republic of China.]

Dated: May 14, 2026

<u>David J. Craven</u>, Craven Trade Law LLC, of Chicago, IL, for Plaintiff AM Stone & Cabinets, Inc.

<u>Alexander Brewer</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  On the brief were <u>Brett A. Shumate</u>, Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Franklin E. White Jr.</u>, Assistant Director, and <u>Anne M. Delmare</u>, Trial Attorney.  Of counsel was <u>Jack Dunkelman</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

        Barnett, Chief Judge:  Before the court is AM Stone & Cabinets, Inc.'s ("AM Stone") motion for judgment on the agency record.  *See* Mot. for J., and accompanying Mem. of Law in Supp. of the Rule 56.2 Mot. of Pl. AM Stone & Cabinets, Inc. for J. upon the Agency R. ("Pl.'s Mem."), ECF No. 26.  The motion challenges the U.S. Department of Commerce's ("Commerce" or "the agency") final results in the 2021–2023 administrative review of the antidumping duty ("AD") order and the 2021–2022

administrative review of the countervailing duty ("CVD") order on certain quartz surface

products from the People's Republic of China ("China").  *See Certain Quartz Surface*

*Prods. From the People's Republic of China*, 89 Fed. Reg. 92,622 (Dep't Commerce

Nov. 22, 2024) (final results of 2021–2023 antidumping duty and 2021–2022

countervailing duty admin. revs.) ("*Final Results*"), ECF No. 14-4, and accompanying

Issues and Decision Mem., A-570-084, C-570-085 (Nov. 15, 2024) ("I&D Mem."), ECF

No. 14-5.[1]  For the reasons discussed herein, the court will sustain Commerce's *Final*

*Results*.

## BACKGROUND

Commerce issued AD and CVD orders on certain quartz surface products from

China in June 2019.  *See Certain Quartz Surface Prods. From the People's Republic of*

*China*, 84 Fed. Reg. 33,053 (Dep't Commerce July 11, 2019) (antidumping and

countervailing duty orders) ("the *Orders*").  In October 2022, Commerce issued a final

scope and circumvention ruling in which it determined that imports of quartz surface

products manufactured in China and further processed in Malaysia were covered by the

scope of the *Orders*.  *See Certain Quartz Surface Prods. From the People's Republic of*

*China*, 87 Fed. Reg. 64,009 (Dep't Commerce Oct. 21, 2022) (final scope ruling on

---

[1] The administrative record for the *Final Results* is divided into a Public Administrative Record ("PR"), ECF No. 14-1, and a Confidential Administrative Record ("CR"), ECF No. 14-2.  Parties submitted joint appendices containing record documents cited in their briefs.  Confid. J.A., ECF No. 35; Public J.A., ECF No. 37; *see also* [Redacted] Confid. J.A., ECF No. 36.  Because Plaintiff relies on the public or confidential administrative record number to identify record documents in the joint appendices, the court likewise cites to the PR or CR, as appropriate.

Malaysian processed quartz slab and recission of the circumvention inquiry) ("*Final Scope Ruling*").  Accordingly, Commerce implemented a certification requirement for all imports of quartz surface products from Malaysia.  *Id.* at 64,010.

Certain companies, including Universal Quartz Industrial SDN BHD ("Universal Quartz"), an exporter of quartz products subject to the *Orders*, and Resstone Manufacturing Sdn. ("Resstone"), a manufacturer of quartz slab exported by Universal Quartz, did not respond to Commerce's requests for information over the course of the scope and circumvention inquiries.  *Id.*  Commerce used adverse facts available ("AFA") to determine that the non-cooperating companies were "exporting to the United States certain quartz surface products processed in Malaysia containing quartz slab manufactured [in] China."[2]  *Id.*  Commerce further determined that the non-cooperating companies would be ineligible to participate in the scope certification process and explained that the non-cooperating companies would be able to request reconsideration of their eligibility in a future segment of the proceeding, such as an administrative review or a changed circumstances review ("CCR").  *Id.*

AM Stone is an importer of quartz products subject to the *Orders*.  In June 2023, AM Stone requested a CCR "to determine whether Universal Quartz [was] eligible to certify that its quartz surface products are not produced from Chinese-origin quartz

---

[2] Commerce solicits information from interested parties to arrive at its determinations over the course of an AD or CVD proceeding.  When Commerce determines that "an interested party has failed to cooperate by not acting to the best of its ability," the agency "may use an inference that is adverse to the interest of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b)(1).  Such inferences are commonly called "adverse facts available" or "AFA."

slab." *Certain Quartz Surface Prods. From the People's Republic of China*, 88 Fed. Reg. 41,385, 41,386 (Dep't Commerce June 26, 2023).  In July 2023, AM Stone further requested administrative reviews of the *Orders* for subject merchandise exported by Universal Quartz.  *See, e.g.*, Req. for Admin. Rev. (July 26, 2023), PR 1 (pertaining to the AD order).[3]  Neither Universal Quartz nor Resstone requested an administrative review or a CCR.  *See* Prelim. Decision Mem. (July 29, 2024) ("Prelim. Mem.") at 2 & nn.3, 7, PR 65 (referencing requests filed by AM Stone, Global Stone LLC, Quartz Surface Distributor, and Artelye Inc.).

Commerce initiated the administrative reviews in September 2023, *see Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 88 Fed. Reg. 62,322, 62,332 (Dep't Commerce Sep. 11, 2023), characterizing AM Stone's requests for the administrative reviews as "requests to review the certification eligibility of Universal Quartz," Prelim. Mem. at 2.  Commerce initiated a CCR in June 2023, *Certain Quartz Surface Prods. From the People's Republic of China*, 88 Fed. Reg. 41,385 (Dep't Commerce June 26, 2023) (initiation of antidumping and countervailing duty changed circumstances revs.; AM Stone), then rescinded the CCR in October 2023, determining that "a party's newfound willingness to participate [in the underlying proceeding] is not a changed circumstance sufficient to warrant . . . a [CCR] review" and that "an

---

[3] While not included in the joint appendices before the court, AM Stone also requested a review with respect to the CVD order.  *See* Req. for Admin. Rev. (July 26, 2023) (filed in Commerce CVD case no. C-570-085; on file with the court); *infra* note 4 (discussing Plaintiff's filing of an amended complaint in this action to include the AD and CVD administrative reviews, and dismissal of a related CVD action).

Court No. 24-00241                                                                Page 5

administrative review is the proper segment of a proceeding for a party . . . to request

reconsideration of its eligibility to certify, absent evidence of a changed circumstance,"

*Certain Quartz Surface Prods. From the People's Republic of China*, 88 Fed. Reg.

72,994, 72,995 (Dep't Commerce Oct. 24, 2023) (rescission of antidumping and

countervailing duty changed circumstances revs.; AM Stone).  Commerce thus

proceeded to examine Universal Quartz's certification eligibility solely in the context of

the administrative reviews.

In the preliminary results of the reviews, Commerce determined that Universal

Quartz remained ineligible to participate in the certification process because AM Stone

had not provided the necessary information to show that the quartz products imported

from Universal Quartz were not of Chinese origin.  *See Certain Quartz Surface Prods.*

*From the People's Republic of China*, 89 Fed. Reg. 63,400 (Dep't Commerce Aug. 5,

2024) (prelim. results of 2021–2023 antidumping duty and 2021–2022 countervailing

duty admin. revs.), PR 66; Prelim. Mem. at 6–7 (restating the same).  Commerce

continued to find Universal Quartz ineligible to participate in the certification process in

the *Final Results* and assigned Universal Quartz the China-wide AD rate and the all-

others rate in the CVD review.  89 Fed. Reg. at 92,623.  Commerce stated that it based

its decision on an analysis of information submitted by AM Stone and that it "did not

apply facts available or AFA in continuing to bar . . . Universal Quartz from the

certification regime."  I&D Mem. at 7.  Commerce explained that "because the exporter

must be able to certify that its exports do not contain Chinese-origin quartz slab, . . . the

exporter is the locus of our examination" and that "AM Stone has not established that

Court No. 24-00241                                                                                 Page 6

Universal Quartz did not use Chinese-origin quartz slab in its entries during the [periods

of review ("PORs")]." *Id.* at 5.  The agency further explained that "even assuming

*arguendo* that Commerce should have limited the scope of its review[s] to AM Stone's

entries during the PORs, we find that we do not have sufficient information on the

record[s] to determine that even the more limited pool of AM Stone's entries do not

contain Chinese-origin quartz slab." *Id.*

      Plaintiff AM Stone filed an Amended Complaint on May 16, 2025, challenging

certain of Commerce's decisions in the underlying administrative reviews.[4]  Am. Compl.

Plaintiff now moves for judgment on the agency record.  *See* Pl.'s. Mem; Reply Br. of

AM Stone & Cabinets Inc. ("Pl.'s Reply"), ECF No. 34.  Defendant United States filed a

response to Plaintiff's motion.  *See* Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. on the

Agency R. ("Gov't's Resp."), ECF No. 33.

---

[4] Here, exceptionally, Commerce issued a single determination applicable to both the AD and CVD administrative reviews.  *See Final Results*, 89 Fed. Reg. at 92,623 n.4. Commerce explained that, because the reviews were conducted for the purpose of determining the certification eligibility of certain exporters, the final results of the reviews "may be [issued] in a single decision applicable to both proceedings."  *Id.*  AM Stone initially commenced a separate action challenging Commerce's determination in the CVD administrative review, *see generally AM Stone & Cabinets, Inc. v. United States*, Court No. 24-243 (CIT Dec. 19, 2024), ECF No.1, which it later dismissed, *see id.*, ECF No. 22 (stipulation of dismissal).  AM Stone instead filed an amended complaint in this action to include its challenge to the underlying determination with respect to both the AD and CVD administrative reviews.  *See* Am. Compl., ECF No. 24.

Court No. 24-00241                                                    Page 7

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018)[5] and 28 U.S.C. § 1581(c) (2018). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

### DISCUSSION

I.     **Whether AM Stone Provided Sufficient Information to Commerce**

    **A. Parties' Contentions**

Plaintiff argues that no facts on the record support Commerce's finding that AM Stone failed to provide sufficient information to establish Universal Quartz's certification eligibility.  Pl.'s Mem. at 7.  Plaintiff further contends that it provided all information in its possession and that this information is sufficient to establish that the quartz slab that it imported was manufactured in Malaysia.  *Id.*; *see also* Pl.'s Reply at 2–3.  Despite not providing information with respect to the totality of Universal Quartz's exports, Plaintiff argues that it "provided the full universe of information" for its imports and that such information "clearly substantiated that production . . . take[s] place in Malaysia."  Pl.'s Mem. at 7–8.  Plaintiff avers that "any deficiencies were those of the exporter," that "[t]here is no evidence" that Plaintiff would have had access to the allegedly missing information, and that "a significant portion of the information not provided" is irrelevant with respect to the country of production of the imports in question.  *Id.* at 8.

---

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

Defendant contends that the focus of Commerce's administrative reviews was Universal Quartz's certification eligibility.  Gov't's Resp. at 8.  Defendant explains that because "[n]either Universal Quartz nor Resstone responded to Commerce's requests for information relating to the scope inquiry," Commerce found those companies ineligible to participate in the certification process during the earlier scope proceeding. *Id.* at 9 (citing *Final Scope Ruling*, 87 Fed. Reg. at 64,010).  Defendant argues that by failing to provide complete responses and information during these administrative reviews, AM Stone failed to rebut the presumption, based on the *Final Scope Ruling*, that Universal Quartz's exports were covered by the *Orders*.  *Id.* at 7–13.  Defendant argues that the burden of producing information to rebut this presumption was on AM Stone as the party requesting the administrative reviews.  *Id.* at 12–13.

## B.  Analysis

As discussed above, Commerce implemented a certification requirement for all imports of quartz surface products from Malaysia in the *Final Scope Ruling*.  *Final Scope Ruling*, 87 Fed. Reg. at 64,010.  With respect to the certification requirement, Commerce explained that "[t]o import quartz surface products from Malaysia and declare them as exempt from the scope of the *Orders* and hence free of AD/CVD duties, the *importer and the exporter* must complete and maintain certifications, along with proof of where the quartz slab was manufactured."  *Id.* at 64,011 (emphasis added).  Commerce further determined that Universal Quartz was not eligible to participate in the certification process, *id.* at 64,010, but that Universal Quartz could

Court No. 24-00241                                                                      Page 9

"request consideration of [its] exclusion from the certification process in a future segment of the proceeding," such as an administrative review, *id.*

In these reviews, Commerce explained that "in evaluating the eligibility of a company previously determined to be ineligible to participate in a certification process, the ineligible company must provide information sufficient to overcome Commerce's presumption that the quartz surface products the company exported to the United States contain Chinese-origin quartz slab." I&D Mem. at 4. During the administrative reviews, Commerce requested "the universe of the exporter's sales to the United States (as well as how the exporter tracked country of origin of [its] exports)," "information related to the exporter and manufacturer's operational and legal structures, as well as their accounting and financial practices," and "the manufacturer's production process and how it tracked the country of origin of the quartz slab it used." *Id.* at 4 & n.7 (citing Prelim. Mem. at 5). The burden of producing the requested information could have been fulfilled by either Universal Quartz, the exporter, or AM Stone, the importer and requesting party. *See Zenith Elecs. Corp. v. United States*, 988 F. 2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production should belong to the party in possession of the necessary information."). But neither AM Stone nor Universal Quartz submitted all the information requested by Commerce. While Universal Quartz did not participate or provide any information, AM Stone did participate but failed to provide complete information. AM Stone did not provide requested information regarding "the universe of Universal Quartz's entries during the POR," Prelim. Mem. at 6, "a fact that AM Stone concede[d]," I&D Mem. at 5. AM Stone further failed to provide information related to

Universal Quartz's corporate structure and documentation related to Universal Quartz's financial and accounting practices.  Prelim. Mem. at 7.

While AM Stone did provide a narrative description of Resstone as well as photographs of Resstone's factory, the information provided was not fully responsive to Commerce's request to demonstrate that Resstone manufactured the quartz surface products in Malaysia during the POR.  *See* Certification Eligibility Questionnaire [Resp.] (June 14, 2024) at 7–11, Exs. 3, 5, CR 10; I&D Mem. at 5–6 (discussing the evidence provided and finding it insufficient).  AM Stone did not, for instance, provide "production records linked to its imports demonstrating that this merchandise specifically was produced in Malaysia, [or] . . . evidence of Resstone's purchases of material inputs that can be tied to AM Stone's purchases," nor did AM Stone provide evidence that Resstone was in possession of certain equipment and machinery necessary to manufacture quartz surface products.  I&D Mem. at 5.  In the absence of record evidence to the contrary, Commerce properly determined that Universal Quartz remained ineligible for the certification process.  While Commerce did use AFA for both Resstone and Universal Quartz in the *Final Scope Ruling*, that use of AFA based on those parties' non-cooperation in a distinct segment of the proceedings does not provide a cognizable basis for AM Stone, a cooperating party, to challenge the implications of that prior determination in these administrative reviews.  In *Mueller*, the U.S. Court of Appeals for the Federal Circuit confirmed that Commerce is not prohibited "from drawing adverse inferences against a non-cooperating party that have collateral consequences for a cooperating party."  *Mueller Comercial de Mexico, S. de R.L. De*

*C.V. v. United States*, 753 F.3d 1227, 1236 (Fed. Cir. 2014).  Accepting as true that AM Stone was fully cooperative and supplied all information within its possession, it is unremarkable that the failure of Universal Quartz and Resstone to provide information about their suppliers and inputs, among other deficiencies, would implicate Commerce's ability to determine that Universal Quartz's exports were outside the scope of the *Orders*, or that the agency's determination would, in turn, have consequences for AM Stone.

With respect to Plaintiff's argument that "a significant portion of the information not provided is ultimately not relevant to the issue as to production of a specific entry," Pl.'s Mem. at 8, it is not for Plaintiff to decide what information is relevant to Commerce's underlying analysis in the context of an administrative review, *see Ansaldo Componenti, S.p.A. v. United States,* 10 CIT 28, 37, 628 F. Supp. 198, 205 (1986) ("It is Commerce, not the respondent, that determines what information is to be provided for an administrative review.").  The information requested by Commerce in the administrative reviews and that AM Stone failed to provide is the type of information that AM Stone as an importer is required to obtain from exporters and maintain under the certification regime.  *Final Scope Ruling*, 87 Fed. Reg. at 64,011 ("The importer is required to complete and maintain the importer certification . . . and retain all supporting documentation (e.g., invoice, purchase order, production records, etc.)."  The burden was on AM Stone or its supplier/exporter, Universal Quartz, to rebut the presumption of certification ineligibility by providing complete information.  Neither party provided

Court No. 24-00241                                                        Page 12

complete information responsive to Commerce's requests, therefore, neither party

rebutted the presumption.

## II.    Whether Commerce Used Facts Available with an Adverse Inference

### A. Parties' Contentions

Plaintiff contends that Commerce used AFA when determining that Universal

Quartz continued to be ineligible for the certification process in the administrative

reviews. [6] Pl.'s Mem. at 9; *see also* Pl.'s Reply at 3–4.  Plaintiff argues that this alleged

use of AFA was improper because Plaintiff was fully cooperative during the

administrative reviews and used its "best efforts" to respond to Commerce's information

requests.  Pl.'s Mem. at 11; *see also id.* at 12–17; Pl.'s Reply at 1–3.  Any missing

information, Plaintiff avers, was not in Plaintiff's possession or control.  Pl.'s Mem. at

17–19; *see also* Pl.'s Reply at 3.  Plaintiff argues that the information it provided to

Commerce during the administrative reviews supports a finding that its imports are

products of Malaysia and that Commerce should thus allow Plaintiff to certify its imports

---

[6] The court notes that, in rescinding the parallel CCR requested by AM Stone, Commerce effectively collapsed two inquiries (i.e., reviewing the rates applicable to AM Stone's entries and reviewing Universal Quartz's certification eligibility) into a single inquiry with Universal Quartz's certification eligibility as the "locus of . . . examination." I&D Mem. at 5.  Plaintiff, however, does not challenge this aspect of Commerce's conduct of the proceedings.  *See generally* Pl.'s Mem.  Commerce explained that, even if it had limited the scope of its review to AM Stone's entries during the POR, the agency would not have had "sufficient information on the record to determine that even the more limited pool of AM Stone's entries do not contain Chinese-origin quartz slab."  I&D Mem. at 5.  Thus, Commerce adequately explained its decision not to calculate assessment rates for AM Stone's entries subject to the reviews independently of its review of Universal Quartz's certification eligibility, and the court does not otherwise find this decision to be in error.

as being of Malaysian origin despite Universal Quartz's failure to provide requested information.  Pl.'s Mem. at 18–20.

Defendant asserts that Commerce did not apply AFA to AM Stone.  Gov't's Resp. at 13–15.  Defendant explains that Commerce relied on AFA in the earlier, separate *Final Scope Ruling* with respect to Universal Quartz to arrive at the determination that Universal Quartz was not eligible to participate in the certification process.  *Id.* at 14.  In contrast, Commerce's finding here that Universal Quartz continued to be ineligible for the certification process was based on a lack of information necessary to rebut the presumption, based on the *Final Scope Ruling*, that Universal Quartz's exports were covered by the *Orders* and not eligible to be certified as being of Malaysian origin.  *Id.*

## B.  Analysis

Commerce did not rely on AFA when determining that Universal Quartz continued to be ineligible for the certification process.  Commerce explained that its finding that imports from Universal Quartz were not eligible for the certification process was based on Plaintiff's failure to submit certain information, and that this information was necessary to rebut the presumption that Universal Quartz's exports of quartz surface products contained Chinese-origin quartz slab.  Prelim. Mem. at 6–7; I&D Mem. at 7.  Commerce accordingly assigned the China-wide AD deposit rate and the all-others CVD deposit rate to Universal Quartz's exports.  *Final Results,* 89 Fed. Reg. at 92,623.  Plaintiff's argument that it "satisfied the statutory requirement of using its best efforts," Pl.'s Mem. at 11, to supply requested information is of no moment.  That standard applies to respondents when Commerce is assessing whether to make an

Court No. 24-00241                                                    Page 14

adverse inference which, as discussed above, did not occur here.  *See Nippon Steel*

*Corp. v. United States,* 337 F.3d 1373, 1382 (Fed. Cir. 2003) (establishing the "best of

its ability" standard in the context of an adverse inference determination).  The *Final*

*Results* will therefore be sustained.

CONCLUSION

In accordance with the foregoing, Commerce's *Final Results* will be sustained.

Judgment will be entered accordingly.

/s/      Mark A. Barnett<br>Mark A. Barnett, Chief Judge

Dated: May 14, 2026
        New York, New York